UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORY BROOKS,

    Plaintiff,

v

JEREMY YONO,
in his Individual Capacity,
WASHTENAW COUNTY,
a municipal corporation,

    Defendant.

Case No.:

Hon. _____

_____/

ROBERT M. GIROUX (P47966)
ANDREW J. LAURILA (P78880)
Giroux Pappas Trial Attorneys, P.C.
Attorneys for Plaintiff
28588 Northwestern Hwy., Ste. 100
Southfield, MI 48034
(248) 531-8665; Fax: (248) 308-5540
rgiroux@greatMIattorneys.com
alaurila@greatMIattorneys.com

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Cory Brooks, by his attorneys, Giroux Pappas Trial Attorneys, P.C., for his Complaint against the Defendants, Jeremy Yono and Washtenaw County, states as follows:

1

## **PARTIES, JURISDICTION AND VENUE**

1. At all times relevant to this lawsuit, Plaintiff Cory Brooks was a citizen of the City of Ypsilanti, County of Washtenaw, State of Michigan.

2. Defendant Washtenaw County is a Michigan municipal corporation, duly organized and carrying on governmental functions in the County of Washtenaw, State of Michigan, and is the body responsible for the control and oversight of its departments, agencies and facilities including the Washtenaw County Sheriff's Department ("WCSD"), as well as its deputies and employees, including, but not limited to Defendant Yono.

3. Upon information and belief, Defendant Jeremy Yono is a citizen of the State of Michigan and was at all times relevant to this action, employed as a Sheriff Deputy by the WCSD.

4. Throughout the events giving rise to this Complaint, the individual Defendant was at all times acting in his respective individual capacity, within the course and scope of his employment as a deputy employed by the WCSD, and under color of law.

5. This lawsuit arises out of events occurring within the City of Ypsilanti, County of Washtenaw, and State of Michigan.

6. Defendants are jointly and severally liable to Plaintiff for the claims asserted therein.

7. This cause of action involves violations of Plaintiff's civil rights, as secured by the United States Constitution and is brought pursuant to 42 U.S.C. § 1983.

8. This Court has jurisdiction over the claims brought pursuant to 42 U.S.C. § 1983 based upon the laws of the United States pursuant to 28 U.S.C. §§ 1331, 1343.

9. The amount in controversy exceeds $75,000.00, exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

10. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as this cause of action arises out of occurrences that took place within this District, in the County of Washtenaw, and Defendant Washtenaw County (specifically the Sheriff's Department) is a municipal corporation within this district.

## **FACTUAL ALLEGATIONS**

11. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 10, as if fully set forth herein.

12. On April 27, 2022, Plaintiff Cory Brooks was traveling in his vehicle eastbound on Michigan Avenue in Ypsilanti.

13. At some point, he passed Defendant Jeremy Yono, who was operating a WCSD vehicle and traveling the opposite direction.

14.  Plaintiff allegedly was traveling 64 mph in a 50 mph zone, and after Plaintiff passed Yono's vehicle—a black explorer that does not readily appear as a police vehicle—Defendant Yono ultimately made a U-Turn but did not turn on his police lights.

15.  Plaintiff continued traveling eastbound, unbeknownst to him that Yono was coming down the road.

16.  At no point while Defendant Yono traveled down Michigan Avenue was he behind Plaintiff's vehicle and/or had his sirens/police lights on, yet he observed Plaintiff turn left into an Exxon Mobil gas station located near Holmes and Michigan Avenue and park at a gas pump.

17.  Ten seconds after Plaintiff turned into the gas station and by the time Plaintiff had reached a gas pump and stopped, Yono turned into the Exxon gas station, still without his police lights on.

18.  Defendant Yono then pulled up behind Plaintiff's vehicle, still without sirens or lights:



19. Contemporaneous with Plaintiff exiting his vehicle to pump gas, Defendant Yono activated his vehicle's lights.

20. At this point, Defendant Yono yelled from his vehicle for Plaintiff to stay in the car, to wit, Plaintiff reasonably asked, "why?".

21. Defendant Yono then approached Plaintiff, and aggressively said, "[i]s that how you want to go about this traffic stop right now"?

22. As Defendant Yono got very close to Plaintiff Brooks, who is a Military veteran and was wearing U.S. Army clothing, Plaintiff said, "you're approaching me, and I'm taking that as a threat."

23. Defendant Yono then aggressively and without cause said, "get back in your car and I'm going to put you in handcuffs", wherein Plaintiff reasonably questioned, "why"? and "for what"?

24. When Plaintiff asked "for what" in response to Defendant's statement, Defendant Yono aggressively began grabbing Plaintiff's right arm and trying to

5

twist it backwards and shoving him against the vehicle, while saying, "put your hands behind your back or you're going to go to jail."

25. At no point did Defendant Yono explain and/or state why he was now physically attempting to detain Plaintiff.

26. Without any sort of active resistance from Plaintiff while pinned against his car, Defendant Yono then used a takedown tactic and flung Plaintiff's body to the cement, landing on top of him with Yono's full body weight.

27. With Plaintiff on the ground—who continued to object to the incident and Yono's use of force—Yono then placed his entire body weight on Plaintiff's back and neck and forcibly pushed Plaintiff's head and neck down towards the cement.

28. Approximately a minute and a half later, Deputy Philips from WCSD arrived and participated in this incident with Defendant Yono.

29. During this encounter, Plaintiff informed Defendant that he was a combat veteran who had served in the Army and had pre-existing spine, neck, hips, and pelvic injuries from his time serving.

30. Despite that, Yono took act(s) that were specifically injurious to Plaintiff's spine and neck and caused trauma to the same.

31. At no point did Defendant Yono observe Plaintiff commit any violent felony or crime at any time prior to or during the confrontation or brutal, unjustified physical attack on the Plaintiff.

32. Plaintiff did not have a weapon on his person or display any object that appeared to be a weapon at any time prior to or during the confrontation or brutal, unjustified physical attack on the Plaintiff.

33. Plaintiff did not threaten the Defendant in any manner at any time prior to or during the confrontation or brutal, unjustified physical attack on Plaintiff; quite oppositely, Plaintiff acted reasonably and merely attempted to ascertain what was happening given the lack of information provided to him by Defendant Yono at all pertinent times.

34. Plaintiff did not pose an immediate threat of harm to the Defendant or any other person in the immediate vicinity at any time prior to or during the confrontation or brutal, unjustified physical attack on Plaintiff.

35. Plaintiff did not pose any realistic likelihood of risk of flight at any time prior to or during the confrontation or brutal, unjustified physical attack on the Plaintiff.

36. Defendant did not have a justifiable reason to use the force that he deployed at any time prior to or during the confrontation or brutal physical attack on the Plaintiff.

37. It is upon information and belief that Defendant Yono's conduct—failing to use his police lights/siren, failing to articulate any lawful basis for his conduct, and responding to reasonable requests with unreasonable aggression—arose from a lack of qualifications/demeanor for the job of deputy and a propensity to act in this manner, both of which were known to Defendant WCSD from the time it hired him to this point.

38. As a direct and proximate result of the wrongful acts and omissions of Defendant, Plaintiff sustained severe and permanent injuries, including but not limited to injuries to his neck and spine and the aggravation/exacerbation of pre-existing neck and back injuries he sustained while deployed for the Army.

## COUNT III
## 42 U.S.C. § 1983—EXCESSIVE FORCE
## AS TO DEFENDANT YONO

39. Plaintiff hereby incorporates by reference each of the allegations contained in previous paragraphs as though fully set forth herein.

40. At all times relevant, Plaintiff had a clearly established right to be free from unreasonable searches, unreasonable seizures, unreasonable detention, unnecessary force, unreasonable force, and excessive force pursuant to the Fourth/Fourteenth Amendment to the United States Constitution.

41. At all times relevant, as a Sheriff deputy acting under color of law, Defendant Yono was required to obey the laws of the United States, including

those laws identified under the Fourth/Fourteenth Amendment to the United States Constitution.

42. In violation of Plaintiff's clearly established constitutionally-protected rights under the Fourth/Fourteenth Amendment to the United States Constitution, Defendant employed unnecessary, unreasonable, and excessive force against Plaintiff, thereby inflicting severe personal injuries upon Plaintiff.

43. Defendant's use of force against Plaintiff, when he knew or should have known that it lacked justification and that Plaintiff neither posed a threat or danger to Defendant nor had been adequately advised of the circumstances, was in violation of clearly established law, and, therefore, Defendant is not entitled to qualified immunity.

44. In addition to being in violation of clearly established law, Defendant's actions were objectively unreasonable under the totality of the circumstances and, therefore, he is not entitled to qualified immunity.

45. Despite that Plaintiff neither resisted nor undertook any threatening acts towards Defendant—quite oppositely, Plaintiff was reasonably speaking to Defendant trying to ascertain what was happening—Defendant Yono proceeded to create the circumstances by acting aggressive and adversarial only to then unreasonably use an aggressive takedown tactic to throw Plaintiff to the cement and subsequently press his entire body weight into Plaintiff's spine and neck.

46. As a direct and proximate result of Defendant's violation of Plaintiff's constitutionally-protected rights, Plaintiff has suffered and will continue to suffer damage into the future, including but not limited to:

   a. Physical pain and suffering;

   b. Aggravation/exacerbation of pre-existing neck, spine, hips and pelvic injuries;

   c. Mental anguish;

   d. Emotional distress;

   e. Fright and shock;
   f. Denial of social pleasures and enjoyment;

   g. Wage loss;

   h. Humiliation or mortification;

   i. Reasonable medical bills and expenses for the past, present and future;

   j. Punitive damages;

   k. Exemplary damages; and

   l. All other damages properly recoverable under law.

47. Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendant is liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendant, this Court must order additional damages to be allowed so as to satisfy any and all

such inadequacies. The conduct of Defendant was and remains extreme and outrageous subjecting Defendant to punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

### COUNT II – MUNICIPAL LIABILITY
### INADEQUATE POLICIES/PROCEDURES/CUSTOMS, FAILURE TO TRAIN, RATIFICATION/ACQUIESENCE
### AS TO DEFENDANT WASHTENAW COUNTY

48. Plaintiff hereby incorporates by reference each of the allegations contained in previous paragraphs as though fully set forth herein.

49. Defendant Washtenaw County's liability as a municipality arises out of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

50. Pursuant to 42 U.S.C § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendant WCSD owed Plaintiff certain duties to properly hire, supervise, monitor, and train the above-named individual Defendant as well as its other Officers so as not intentionally violate the constitutional rights of individuals, including by unlawfully and unreasonably seizing individuals in violation of the constitutional rights of those individuals, and

11

in particular, under the circumstances which existed at all times relevant to this cause of action.

51. Defendant WCSD is liable pursuant to 42 U.S.C § 1983, in that its policies, procedures, regulations, and customs, or that it failed to enact policies, procedures, regulations, and customs, such that these policies, procedures, regulations, and customs, or lack thereof, caused and was the impetus behind the violation of Plaintiff's constitutional rights as alleged in this Complaint.

52. Specifically, Defendant Yono lacked training and supervision regarding how to adequately conduct a traffic stop, including when to use his siren/lights and also how to handle this sort of situation where an alleged traffic violator lacks knowledge of the stop and objectively and reasonably does not understand what is happening.

53. Additionally, Defendant Yono lacked training regarding how to approach this encounter, including a proper technique for addressing this sort of situation and also how to safely and non-violently gain control of Plaintiff without using a violent takedown tactic.

54. Due to Yono's inadequate training and supervision—something that was well known to Defendant WCSD based on Yono's work history and past misconduct, background and demeanor—he used a violent, improper takedown tactic that was unnecessary, excessive and likely to lead to injuries to Plaintiff.

12

55. It is upon information and belief that Defendant WCSD had actual and/or constructive knowledge that Yono had a propensity to unnecessarily escalate encounters such as this and instead of using de-escalation tactics, respond aggressively and adversarially.

56. Defendant WCSD through its policies, procedures, regulations, or customs, or lack thereof, breached its duties, which amounted to reckless indifference toward the constitutional rights of the general public, and toward Plaintiff specifically, in the following ways including, but not limited to:

   a. Failing to properly train its officers, including Defendant Yono, concerning how to effectuate a traffic stop, and how to interact with citizens during a traffic stop, including using force;

   b. Failure to hire and/or retain officers whose character and personality would not pose a potential danger to the public in general and Plaintiff in particular;

   c. Failure to adequately monitor the conduct and behavior of its officers in general, but specifically the above-named individual Defendant, relative to past incidents of the unlawful use of excessive such that, despite written policies against such misconduct, failure to sufficiently punish officers for past incidents of such conduct has led to the formation of a custom that such misconduct will be encouraged and tolerated by WCSD;

   d. Failure to have proper policies, procedures, and training to deal with the circumstances that could amount to unreasonably seizing individuals without probable cause, including persons such as Plaintiff;

   e. Failure to properly screen, supervise, discipline, transfer, counsel or otherwise control police officers, including the

       above-named individual Defendant, who are known or should have been known to engage in improper conduct like this case specifically but not limited to improperly effectuating traffic stops and using excessive force;

    f. Failure to supervise and/or train Officers to prevent violation of citizens' Constitutional rights;

    g. Sanctioning officers' unlawful and unreasonable conduct by failing to adequately discipline or terminate officers who were known to have violated the Constitutional right of citizens on prior occasions, including but not limited to the above-named individual Defendant;

    h. Having a custom, policy, or practice of tolerating the violation of constitutional rights by officers;

    i. Ratifying the violation of constitutional rights by officers;

    j. Other acts and omissions which may be learned through the course of discovery.

57. Defendant's callous and repeated disregard of Plaintiff's constitutional rights rises to the level of deliberate indifference.

58. Defendant's conduct in allowing and adopting this patent violation of Plaintiff's Constitutional rights was done with malice and/or reckless indifference towards Plaintiff.

59. Defendant maintained a custom and practice of allowing deputies who Defendant knew or should have known lacked the qualifications and demeanor for this sort of interaction during a traffic stop to do so without adequate training and/or supervision; both in the form of training and also on-the-job supervision.

60. That as a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained damages as set forth in Paragraph 46.

61. Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as exemplary damages so wrongfully incurred, as the Court deems just.

Respectfully submitted,

By: /s/ *Andrew J. Laurila*
Robert M. Giroux (P47966)
Andrew J. Laurila (P78880)
Giroux Pappas Trial Attorneys, P.C.
Attorneys for Plaintiff
28588 Northwestern Hwy., Ste. 100
Southfield, MI 48034
(248) 531-8665; Fax: (248) 308-5540
rgiroux@greatMIattorneys.com

Dated: August 31, 2023        alaurila@greatMIattorneys.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORY BROOKS,

    Plaintiff,                                Case No.:

v                                          Hon. _____

JEREMY YONO,
in his Individual Capacity,
WASHTENAW COUNTY,
a municipal corporation,

    Defendant.
_____/

ROBERT M. GIROUX (P47966)
ANDREW J. LAURILA (P78880)
Giroux Pappas Trial Attorneys, P.C.
Attorneys for Plaintiff
28588 Northwestern Hwy., Ste. 100
Southfield, MI 48034
(248) 531-8665; Fax: (248) 308-5540
rgiroux@greatMIattorneys.com
alaurila@greatMIattorneys.com
_____/

## JURY DEMAND

      Plaintiff, Cory Brooks, through his attorneys, Giroux Pappas Trial Attorneys, P.C., hereby demands Trial by Jury in this matter.

                                                      Respectfully submitted,

                                          By: /s/ *Andrew J. Laurila*
                                               Robert M. Giroux (P47966)

|  |  |
|---|---|
|  | Andrew J. Laurila (P78880) |
|  | Giroux Pappas Trial Attorneys, P.C. |
|  | Attorneys for Plaintiff |
|  | 28588 Northwestern Hwy., Ste. 100 |
|  | Southfield, MI 48034 |
|  | (248) 531-8665; Fax: (248) 308-5540 |
|  | rgiroux@greatMIattorneys.com |
| Dated: August 31, 2023 | alaurila@greatMIattorneys.com |