UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CORY BROOKS,<br><br>                  Plaintiff,<br><br>v.<br><br>JEREMY YONO et al.,<br><br>                  Defendants. | Case No. 23-12238<br>Honorable Shalina D. Kumar<br>Magistrate Judge David R. Grand |

**OPINION AND ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANTS' MOTION TO DISMISS (ECF NO. 10)**

Plaintiff Cory Brooks sued defendants Jeremy Yono and Washtenaw County (the "County") under 42 U.S.C. § 1983, alleging a Fourth Amendment excessive force violation against Yono, and municipal liability against the County. ECF No. 1.

Defendants move to dismiss. ECF No. 10. The parties fully briefed the motion, and the Court heard oral argument on August 28, 2024. ECF Nos. 10, 13-14. This matter is now ripe for decision. For the reasons below, the Court grants in part and denies without prejudice in part defendants' motion.

I.  **Background**

This action arises from an April 27, 2022 traffic stop. After traveling down a Washtenaw County highway, Brooks stopped at a gas station. ECF No. 1, PageID.3-4. As he exited his car, Yono, a Washtenaw County sheriff's deputy, parked behind Brooks, activated his lights, and told Brooks to stay in his car. *Id.* at PageID.4-5. Yono indicated that he was conducting a traffic stop. *Id.* at PageID.5.

The traffic stop quickly escalated. As Yono approached, Brooks said, "You're approaching me, and I'm taking that as a threat." *Id.* Yono warned Brooks to sit back in his car or be placed in handcuffs. *Id.* According to Brooks, when he responded, "For what?", "Yono aggressively began grabbing [his] right arm" and, "[w]ithout any sort of resistance from [Brooks]," Yono used a takedown maneuver on Brooks. ECF No. 1, PageID.5-6.

But video evidence shows that after Brooks questioned Yono's warning, Yono followed through on his warning that he would handcuff Brooks if he did not sit back in his car. ECF No. 10-2, 1:04-1:07. When Yono proceeded to grab Brooks' arm for handcuffing, Brooks pulled his arm away and in front of himself, repeatedly saying "Don't touch me," as Yono ordered Brooks to put his hands behind his back. *Id.*, 1:05-1:10. The two

struggled for control of Brooks' hands, while Yono repeated his orders for Brooks' hands. *Id.*, 1:10-1:23; ECF No. 10-3, 1:16-1:35. In response to one such order, Brooks said "Nope." ECF No. 10-2, 1:15-1:17. And when Yono radioed that the two were "fighting," Brooks exclaimed they were indeed "fighting." *Id.*, 1:20-1:22. Yono then took Brooks down to the ground, where they continued to struggle for control of Brooks' hands until another County deputy arrived. *Id.*, 1:30-3:00; ECF No. 10-3, 1:36-3:00.

Brooks alleges spine and neck trauma from Yono's takedown and sued Yono and the County. ECF No. 1, PageID.6. Under 42 U.S.C. § 1983, Brooks claims that Yono used excessive force in violation the Fourth Amendment and that the County is liable under various theories of municipal liability. *Id.* at PageID.8-15. Defendants now move to dismiss Brooks' claims based on qualified immunity and failure to state a claim. ECF No. 10.

## II.     Standard of Review

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

To survive a motion to dismiss based on qualified immunity, a plaintiff must allege facts plausibly showing that the defendant-officer violated a constitutional right that was clearly established at the time of the violation. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). Unless the plaintiff does so, "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The plaintiff bears the burden of showing that the defendant-officer is not entitled to qualified immunity. *Id.*

III. **Analysis**

A. **Video Evidence**

As a threshold issue, the Court must determine whether and to what extent it may draw from defendants' video evidence in analyzing defendants' motion to dismiss. The Court ordinarily reviews only the complaint under Rule 12(b)(6). *See Bell v. City of Southfield*, 37 F.4th 362,

364 (6th Cir. 2022) (citing *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)). But if a plaintiff's allegations "contradict verifiable facts central to his claims, that makes his allegations implausible" on Rule 12(b)(6) review. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017).

Allegations are implausible if "indisputable video evidence" contradict the allegations. *Bell*, 37 F.4th at 364 (citing *Bailey*, 860 F.3d at 387). Accordingly, "[the Court] can only rely on . . . videos over the complaint to the degree the videos are clear and blatantly contradict or utterly discredit the plaintiff's version of events." *Bell*, 37 F.4th at 364 (cleaned up). To the extent that the video evidence does not contradict and render implausible the plaintiff's allegations, the Court must accept those uncontradicted allegations as true. *Id.*

In *Bell*, the Sixth Circuit determined at the pleadings stage that video evidence contradicted certain of the plaintiff's allegations and consequently relied on the video evidence over those allegations to analyze whether the defendant-officers were entitled to qualified immunity. *Id.* at 366-67. The plaintiff in *Bell* alleged that the defendant-officers used excessive force against him by (1) removing him from his car following a struggle with the officers through the car window and (2) tasing him while he was on the ground following his removal from the car. *Id.* at 365-66. The plaintiff's

allegations presented two key factual issues: which party started the car window struggle and whether the officers involved needed to tase the plaintiff afterwards. *See id.* at 366-67.

As to who started the car window struggle, the plaintiff alleged that an officer "began to forcefully remove" him through the car window, while the defendants asserted that the officer did so after the plaintiff extended his hand to the officer first. *Id.* at 366. Because the video evidence did not show exactly what happened at the start of the struggle, the court could not rely on the video evidence to determine whether defendants used justified, as opposed to excessive, force during the car window struggle. *See id.*

As to the need to tase the plaintiff, the plaintiff alleged "only that the officers 'tased [him] when there was no need to do such.'" *Id.* at 367. The plaintiff failed to mention any continued resistance, but the video "clearly show[ed]" the plaintiff "moving his left arm away from [an officer] multiple times before the officer tased him." *Id.* Because the video evidence "blatantly contradict[ed] the silence" in the plaintiff's version of the facts, the court relied on the video evidence to find that the plaintiff resisted the officers. *Id.* at 368 ("[The] video evidence shows Bell actively resisting—he repeatedly pulled his left arm away from Langewicz to avoid the handcuff . . . .").

Likewise here, the video evidence resolves the parties' factual dispute about whether Brooks resisted Yono during the arrest. *See id.* A central aspect of Brooks' excessive force claim is that Yono took Brooks down without justification as Brooks allegedly did not resist Yono during the arrest. ECF No. 1, PageID.6, 9. However, the video evidence shows Brooks verbally and physically resisting Yono during the arrest: Brooks pulled his arm away and repeatedly said, "Don't touch me," after Yono indicated he would arrest Brooks, grabbed Brooks' arm to do so, and told Brooks to put his arms behind his back. ECF No. 10-2, 1:02-1:10. Brooks continued struggling with Yono for control of his hands while Yono continued ordering Brooks to surrender his hands. *Id.*, 1:10-1:23; ECF No. 10-3, 1:16-1:35. At one point, Brooks responded "Nope," to one of Yono's orders for his hands, ECF No. 10-2, 1:15-1:17; at another, Brooks conceded the two were "fighting" during the struggle, *id.*, 1:20-1:22. Because the complaint is silent about Brooks' behavior before and during the arrest yet alleges that Yono took Brooks down without justification, the video evidence "blatantly contradicts" Brooks' account of the arrest. *Bell*, 37 F.4th at 367-68.

Unlike *Bell*, this is not a case where the parties dispute who started the struggle and the video evidence does not show what happened. *See id.*

at 366. Rather, the parties here dispute whether Brooks resisted Yono, and the video evidence clearly shows that he did. "[N]o reasonable jury could watch the video evidence and agree" with Brooks that he did not resist Yono during the arrest. *Bailey*, 860 F.3d at 386. This makes his nonresistance allegations implausible. *See id.* at 387. Accordingly, the Court relies on the video evidence over the complaint for the facts as to Brooks' behavior during the arrest. *See Bell*, 37 F.4th at 367-68.

### B. Qualified Immunity

Based on the video evidence, Yono asserts that Brooks' complaint should be dismissed under qualified immunity. Qualified immunity "shields government officials performing discretionary functions from liability for civil damages." *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011) (cleaned up). "[O]fficers are entitled to qualified immunity under §1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (citation omitted). "Clearly established" means that, at the time of the officer's conduct, the law was sufficiently clear such that "every reasonable official" would understand that what the officer did was unlawful. *Id.* at 63.

"[I]t is generally inappropriate" to find an officer entitled to qualified immunity at the early stage of a Rule 12 motion. *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 661 (6th Cir. 2021) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)). This is because, considering only the factual allegations in the complaint, it can be difficult to determine "'whether the facts of this case parallel a prior decision or not' for purposes of determining whether a right is clearly established." *Id.* at 660-61 (quoting *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019)). Nevertheless, a district court cannot defer a decision on qualified immunity merely because it must make the decision on a Rule 12 motion. *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1003 (6th Cir. 2024). Because qualified immunity is a defense not just to liability but to having to litigate the suit itself, a district court must resolve the question as soon as possible. *Id.*

The Fourth Amendment's prohibition against unreasonable seizures generally protects individuals from an officer's use of excessive force while making an arrest. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989). But whether an officer's use of force in effecting an arrest violates the Fourth Amendment turns on whether his particular actions are "objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Martin v. City of Broadview*

*Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (cleaned up). The inquiry is not whether any force was justified but "whether [the officer] could reasonably use the *degree* of force employed." *Id.* (emphasis in original).

Here, despite the video evidence, there are fact issues that make dismissal based on qualified immunity inappropriate at this early stage of litigation. Although the video evidence shows Brooks resisting Yono's efforts to handcuff him, it does not show the circumstances behind the traffic stop. The video evidence does not show whether Brooks was speeding before he pulled into the gas station, whether Yono waited until he pulled up behind Brooks at the gas station to turn his cruiser lights on, and whether Brooks had enough time to understand what was happening and to understand Yono's orders before struggling with Yono. These fact issues are relevant to the nature and severity of Brooks' alleged crimes and the alleged threat that Brooks posed to Yono—factors that the Court must consider to properly analyze whether Yono's takedown was justified. *See Graham*, 490 U.S. at 396; *Laplante v. City of Battle Creek*, 30 F.4th 572, 579-80 (6th Cir. 2022) (holding jury could reasonably find excessive force in violation of the Fourth Amendment where officer took down plaintiff who did not understand or have enough time to comply with orders).

Indeed, these fact issues must first be resolved before the Court may properly consider, as it must under the Fourth Amendment, the "objective reasonableness" of Yono's actions under the totality of the case's circumstances and the ultimate issue of whether Yono's takedown violated Brooks' clearly established constitutional rights.[1] *Graham*, 490 U.S. at 388; *see Eggleston v. Wayne Cnty.*, Ohio, 2021 WL 3550778, *4 (N.D. Ohio 2021) (declining to grant qualified immunity at pleadings stage because, despite video evidence, fact issues prevented court from properly considering objective reasonableness of officers' actions). Because the Court requires more factual information about the nature and circumstances of the traffic stop and arrest, the Court denies as premature defendants' request for an early-stage dismissal based on qualified immunity. Defendants may reassert qualified immunity again once

---

[1] Under the Fourth Amendment, active resistance often tends to justify the degree of force needed to subdue a suspect. *See Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015). The video evidence here clearly shows Brooks verbally and physically resisting Yono's arrest, and the Court doubts that there is a clearly established Fourth Amendment right to be free from a takedown in response to such behavior. *See* ECF No. 10-2, 1:02-1:23; ECF No. 10-3, 1:16-1:35. However, the nature and extent of Brooks' resistance is one part of the Court's excessive-force analysis—a complete analysis would involve considering the totality of the circumstances, including those leading up to the traffic stop, as well as Brooks' resistance. At this stage, without having the totality of the circumstances, the Court cannot properly conduct a complete excessive-force analysis.

discovery reveals enough information about the nature and circumstances of the traffic stop and arrest.

### C. Municipal Liability

To hold a municipality liable under § 1983, a plaintiff must show the alleged constitutional violation was due to a municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The plaintiff may show a policy or custom through allegations about (1) the municipality's official policies or legislative enactments; (2) the actions of an official with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence to federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Brooks alleges liability based on inadequate training or supervision. To state a claim for municipal liability based on inadequate training or supervision, a plaintiff must allege "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286-87 (6th Cir. 2020) (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir.

2006). The Court must "focus . . . on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

Even if the complaint adequately alleges an underlying constitutional violation, it fails to state a plausible failure-to-train municipal liability claim against the County. As defendants argue, the complaint provides no specific allegations about the County's training or supervision regarding the use of force during traffic stops. According to the complaint, the County "[f]ail[ed] to properly train its officers, including Defendant Yono, concerning how to effectuate a traffic stop, and how to interact with citizens during a traffic stop, including using force." ECF No. 1, PageID.12. The complaint provides no other allegations showing what constituted the County's training or supervision on the use of force during traffic stops and how such training or supervision was inadequate for using force during traffic stops. *See City of Canton*, 489 U.S. at 390.

Brooks argues that the Court may plausibly infer that the County had inadequate training and supervision based on Yono's alleged conduct, which purportedly shows a lack of "qualifications/demeanor for the job." ECF No. 13, PageID.127-28. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the

[municipality], for the officer's shortcomings may have resulted from factors other than a faulty training program." *Harris*, 489 U.S. at 390-91. The Court must focus on the County's training, *see id.* at 390, yet the complaint fails to provide any allegations showing how the County's training contributed to Yono's alleged shortcomings. Instead, Brooks asks the Court to speculate that the County must have inadequately trained or supervised its officers on the use of force during traffic stops. Such speculation cannot establish a plausible failure-to-train claim. *See id.*; *Twombly*, 550 U.S. at 555; *Chase v. White*, 2016 WL 7210155, at *11 (M.D. Tenn. Dec. 13, 2016) (holding that officers' alleged violation of rights could not, without more, permit an inference that the County inadequately trained its officers).

Even if the complaint plausibly alleges inadequate training or supervision, Brooks' failure-to-train claim still fails because the complaint does not plausibly allege deliberate indifference. *See Ouza*, 969 F.3d at 700. A plaintiff may allege deliberate indifference in two ways: (1) by alleging facts showing that the municipality's awareness of "prior instances of unconstitutional conduct" put it on notice that its training or supervision was "deficient and likely to cause injury" or (2) by alleging a single violation of federal rights, accompanied by allegations showing that the municipality has failed "to equip law enforcement officers with specific tools to handle

recurring situations" that present an "obvious" potential for such a violation. *Id.* at 287 (citations omitted).

Here, the complaint does not allege any prior instances of County officers using excessive force during traffic stops, let alone allegations showing that the County was on notice that its training was deficient. Nor does the complaint allege that the County failed to train its officers to avoid an obvious risk that they might use excessive force during a traffic stop. Indeed, Brooks argues that the complaint shows deliberate indifference by analyzing only Yono's conduct, completely overlooking the need for allegations about prior instances or an obvious risk of County officers using excessive force during traffic stops. *See id.* Because the complaint fails to allege the County's deliberate indifference, as well as any deficiencies in the County's training or supervision on the use of force during traffic stops, Brooks' municipal liability claim against the County must be dismissed.

### IV. Conclusion

For the reasons above, the Court **GRANTS IN PART AND DENIES IN PART** defendants' motion to dismiss (ECF No. 10). The motion is **GRANTED** to the extent that Brooks' municipal liability claim against the County is **DISMISSED**. Brooks' only remaining claim is a § 1983 Fourth Amendment excessive force claim against Yono. The motion is **DENIED**

**WITHOUT PREJUDICE** to the extent that the Court declines to dismiss the remaining claim based on qualified immunity at this early stage. Yono may reassert qualified immunity in another motion once discovery reveals information sufficient to properly consider qualified immunity.

    **IT IS SO ORDERED.**

Dated: September 30, 2024

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge