## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CORY BROOKS,

      Plaintiff,

v

JEREMY YONO, ~~and WASHTENAW COUNTY, a municipal corporation~~,

      Defendants.

Case No. 4:23-cv-12238-SDK-DRG

Hon. Shalina D. Kumar

### Defendant Jeremy Yono's Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, Defendant Jeremy Yono moves for summary judgment on all claims against him. In support of his motion, Defendant Yono relies on the accompanying brief.

Defendant's counsel certifies that counsel met and conferred with Plaintiff's counsel via Zoom on September 12, 2025, explaining the nature of relief sought in this motion and seeking concurrence. Plaintiff's counsel did not concur.

MILLER JOHNSON
*Attorneys for Defendant Jeremy Yono*

Dated: October 10, 2025

By  */s/James A. Buster*
    Keith Eastland (P66392)
    James A. Buster (P81186)
    Amanda Rauh-Bieri (P83615)
    45 Ottawa Avenue SW, Suite 1100
    Grand Rapids, MI 49503
    (616) 831-1700
    eastlandk@millerjohnson.com
    busterj@millerjohnson.com
    rauhbieria@millerjohnson.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CORY BROOKS,

      Plaintiff,

v

JEREMY YONO, ~~and WASHTENAW COUNTY, a municipal corporation~~,

      Defendants.

Case No. 4:23-cv-12238-SDK-DRG

Hon. Shalina D. Kumar

### Defendant Jeremy Yono's Brief in Support of His Motion for Summary Judgment

## **Table of Contents**

Index of Authorities ................................................................................... iv

Issues Presented    ................................................................................. vii

Most Appropriate Authority .................................................................. viii

Introduction    ......................................................................................... 1

Statement of Material Facts .................................................................... 2

     A.    Yono witnessed Brooks speeding. ........................................... 2

     B.    Yono turned on his cruiser lights as Brooks entered a gas station ........ 3

     C.    Brooks exited his vehicle, and Yono instructed him to get back into the car, but Brooks refused. ................................................... 3

     D.    After Brooks resisted, Yono initiated a takedown maneuver to gain control of him. ...................................................................... 5

     E.    Brooks struggled with Yono for about a minute and a half before ....... 7

other Washtenaw County officers arrived at the scene to help ...................... 7

detain Brooks.    ...................................................................... 7

     F.    Brooks pleaded guilty to attempted resistance and obstruction of an officer performing his duties. ................................................ 7

Standard of Review ................................................................................. 8

Argument    ............................................................................................. 9

I.    Yono is entitled to qualified immunity because he used objectively reasonable force and no clearly established law placed his conduct out of constitutional bounds. ....................................................................... 9

     A.    Deputy Yono's takedown maneuver did not constitute excessive force under the Fourth Amendment. ........................................... 10

          1.    Brooks actively resisted. ......................................... 10

|   | 2. | Before the takedown maneuver, Brooks engaged in behavior that qualified as a felony under Michigan law. | 11 |

|   | 3. | Brooks' conduct posed a safety risk to Yono. | 13 |

| B. | Yono's takedown maneuver did not violate clearly established law. | 17 |

Conclusion ............................................................................................... 19

## <u>Index of Authorities</u>

**Cases**                                                                        **Page**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...............................................................................................................8

*Ashbrook v. Block*,
   917 F.2d 918 (6th Cir. 1990) .................................................................................................8

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) .............................................................................................................17

*Bell v. City of Southfield*,
   37 F.4th 362 (6th Cir. 2022) ........................................................................................ viii, 2

*Bolden v. City of Euclid*,
   595 Fed. App'x. 464 (6th Cir. 2014) ...................................................................................14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................................................8

*Feagin v. Mansfield Police Dep't.*,
   No. 24-3710, 2025 WL 2621665 (6th Cir. Sept. 11, 2025) ...............................13

*Graham v. Connor*,
   490 U.S. 386 (1989) ............................................................................................................10

*Hicks v. Scott*,
   958 F.3d 421 (6th Cir. 2020) ....................................................................................... viii, 9

*Hunter v. Bryant*,
   502 U.S. 224 (1991) ............................................................................................................17

*Johnson v. Moseley*,
   790 F.3d 649 (6th Cir. 2015) ................................................................................................9

*Kent v. Oakland Cnty.*,
   810 F.3d 384 (6th Cir. 2016) ..................................................................................11, 16, 18

*Kingsley v. Hendrickson*,
   576 U.S. 389 (2015) .....................................................................................................10, 17

*Kisela v. Hughes*,
   584 U.S. 100 (2018) (per curiam) ................................................................ viii, 17

*Martin v. City of Broadview Heights*,
   712 F.3d 951 (6th Cir. 2013) .................................................................................9

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ..............................................................................................9

*Mullenix v. Luna*,
   577 U.S. 7 (2015) (per curiam) ...........................................................................17

*Palma v. Johns*,
   27 F.4th 419 (6th Cir. 2022) ...................................................................... viii, 13

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ..............................................................................................9

*Reich v. City of Elizabethtown*,
   945 F.3d 968 (6th Cir. 2019) ..................................................................... viii, 10 17

*Robinson v. City of Knoxville, Tennessee*,
   No. 24-5159, 2025 WL 621451 (6th Cir. Feb. 26, 2025) ........................................13

*Rudlaff v. Gillispie*,
   791 F.3d 638 (6th Cir. 2015) .......................................................... viii, 11, 16, 18

*Ryan v. Hazel Park*,
   279 F. App'x 335 (6th Cir. 2008) ....................................................................... 11

*Scott v. Harris*,
   550 U.S. 372 (2007) ..............................................................................................2

*Thompson v. Fresh Prod., LLC*,
   985 F.3d 509 (6th Cir. 2021) .................................................................................8

**Statutes**

Mich. Comp. Laws § 750.81d(1) ......................................................................... 7, 12

Mich. Comp. Laws § 750.92 .............................................................................. 7, 12

## Other Authorities

Fourth Amendment ........................................................................................*passim*

Fed. R. Civ. P.12(b)(6) ........................................................................... 11

Fed. R. Civ. P. 56(a) .................................................................................8

**Issues Presented**

I.     Uncontroverted video footage and deposition testimony establish that: (1) on April 27, 2022, Deputy Yono pulled Brooks over for speeding; (2) Brooks disobeyed Deputy Yono's orders to return to his vehicle; (3) Brooks told Yono he viewed Yono "as a threat"; and (4) Brooks actively resisted Yono's attempt to arrest him, causing Yono to initiate a takedown maneuver to subdue Brooks. Furthermore, during a subsequent plea hearing for charges relating to attempted obstruction and resistance, Brooks admitted to committing the offense while knowing or having reason to know Yono was performing his official duties as a deputy sheriff.

No Sixth Circuit case clearly establishes that employing a takedown maneuver constitutes excessive force under these circumstances. In fact, it is clearly established in the Sixth Circuit that using a taser—force far greater than a mere takedown maneuver—is reasonable under these circumstances.

Is Deputy Yono entitled to qualified immunity in this case?

Plaintiff answers: No.

Defendant answers: Yes.

## **Most Appropriate Authority**

1.  *Bell v. City of Southfield, Michigan*, 37 F.4th 362 (6th Cir. 2022)

2.  *Hicks v. Scott*, 958 F.3d 421 (6th Cir. 2020)

3.  *Kisela v. Hughes*, 584 U.S. 100 (2018) (per curiam)

4.  *Palma v. Johns*, 27 F.4th 419 (6th Cir. 2022)

5.  *Reich v. City of Elizabethtown*, 945 F.3d 968 (6th Cir. 2019)

6.  *Rudlaff v. Gillispie*, 791 F.3d 638 (6th Cir. 2015)

7.  ECF No. 19, PageID.156, Opinion and Order Granting in Part and Denying Without Prejudice in Part Defendants' Motion to Dismiss

## Introduction

Courts recognize that traffic stops are inherently volatile, requiring law enforcement officers to make split-second decisions in unpredictable and potentially dangerous conditions. Qualified immunity provides room for mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. In all other circumstances, officers are entitled to immunity.

On April 27, 2022, Deputy Jeremy Yono pulled Plaintiff Cory Brooks over after observing him driving fourteen miles per hour over the speed limit. During this lawful stop, Yono instructed Brooks to remain in his vehicle and explained the reason for the traffic stop. But Brooks refused to comply with Deputy Yono's basic instruction. Instead, Brooks threatened Deputy Yono, placing one hand in his pocket and extending the other toward Yono, stating: "You're approaching me, and I'm taking that as a threat." Brooks admits that he both heard and understood Deputy Yono's lawful commands to return to his car and to put his hands behind his back. Yet, he actively resisted—refusing to heed Yono's instructions, actively placing his hand in his pocket and telling Yono that the Deputy was a threat, and impeding Yono's efforts to handcuff him. When Yono's repeated de-escalation tactics proved unsuccessful, he employed a takedown maneuver to effectuate the arrest.

Brooks contends that Yono used excessive force in violation of the Fourth Amendment. But the evidence confirms a different story. Indisputable video footage,

1

deposition testimony, and Brooks' conviction for attempted obstruction and resistance confirm that: (a) Yono's use of force was objectively reasonable and (b) no reasonable officer in the same situation would have believed that he was exercising constitutionally impermissible excessive force by using a takedown maneuver. Accordingly, Deputy Yono is entitled to qualified immunity, and the Court should dismiss Plaintiff's claims with prejudice.

**Statement of Material Facts**

In cases where, as here, the relevant events are depicted on video footage, the Court must "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).[1] "[W]hen uncontroverted video evidence easily resolves a case, [courts] honor qualified immunity's principles . . . ." *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022).

**A.     Yono witnessed Brooks speeding.**

While travelling westbound on Michigan Avenue in Ypsilanti, Michigan, Deputy Jeremy Yono observed a red sedan speeding on April 27, 2022. (*See* ECF

---

[1] On November 13, 2023, the Court issued an Order granting Deputy Yono's Motion for Leave to File Exhibits Using the Media File Upload System. (*See* ECF No. 9, PageID.35). Accordingly, Yono submitted three video files along with corresponding transcripts through the Court's electronic portal. Deputy Yono now relies on the same media exhibits in support of his Motion for Summary Judgment. (*See* ECF No. 10-2, PageID.73, Excerpt from Deputy Yono Bodycam; ECF No. 10-3, PageID.75, Excerpt from Deputy Yono Dashcam; ECF No. 10-4, PageID.77, Excerpt from Deputy Phillips Bodycam).

No. 10-3, 00:05-07; **Exhibit 1**: Yono Deposition Transcript, 62:15-16, 20:4-6, 19:1-3). Using the patrol vehicle's speedometer, Deputy Yono confirmed that the red sedan was travelling at 64 miles per hour in a 50-mile-per-hour posted zone. (*Id.*) Yono U-turned to pursue the sedan. (ECF No. 10-3, 00:11-41). The sedan's driver was Plaintiff Cory Brooks. (*Id.*).

### B.      Yono turned on his cruiser lights as Brooks entered a gas station.

Multiple vehicles separated Yono and Brooks as Yono followed Brooks down Michigan Avenue. (*Id.* at 00:25-40). From his training, Deputy Yono knows that when an officer turns on his cruiser lights too soon, suspects often attempt to flee or nearby drivers impede traffic out of confusion that they, instead of the suspect, are being pulled over. (Ex. 1, 70:6-12). Deputy Yono observed Brooks pull into an Exxon gas station and waited to activate his cruiser lights until Deputy Yono began turning into the gas station. (ECF No. 10-3, 00:37-53; Ex. 1, 56:20-25, 57:1-17).

### C.      Brooks exited his vehicle, and Yono instructed him to get back into the car, but Brooks refused.

Deputy Yono pulled his marked patrol vehicle behind Brooks' red sedan. (ECF No. 10-3, 00:47-53). As that occurred, Brooks opened the driver door and exited his vehicle. (ECF No. 10-3, 00:54-57; Ex. 1, 29:23-25). Deputy Yono yelled, "Hey, stay in the car!" (ECF No. 10-2, 00:45-47; ECF No. 10-3, 00:56-57). Brooks questioned, "why", and Yono responded, "Because you're speeding and I just pulled you over. That's why." (ECF No. 10-2, 00:48-49; ECF No. 10-3, 00:58-01:01).

3

Brooks has conceded that he knew Yono was a law enforcement officer based upon his clothing and the marked vehicle. (**Exhibit 2**: Brooks Deposition Transcript, 58:17-23). He has also conceded that he understood he was being ordered to get back in his vehicle. (*Id.* at 58:13-16).

Yono walked toward Brooks, who—instead of following Yono's instructions to remain in the car—reached back into his car but remained standing outside of it. (ECF No. 10-2, 00:53-58; ECF No. 10-3, 01:04-08). Yono asked, "Is that how you want to go about this traffic stop right now? Because you're going eastbound at 64 miles an hour." (ECF No. 10-2, 00:55-59). Brooks did not contest the allegation. (*Id.*)

As Brooks re-emerged from the vehicle, he extended his right hand out toward Deputy Yono with his left hand remaining in his left pocket after reaching into the vehicle, and said: "So, you're approaching me and I'm taking that as a threat." (ECF No. 10-2, 00:58-01:05). Yono responded, "Get back in your car or I'm going to put you in handcuffs, how about that?" (*Id.* at 01:01-04). Rather than returning to his vehicle, Brooks responded, "For what?" (*Id.*).

Deputy Yono felt threatened by Brooks' behavior: "I asked [Mr. Brooks] to get back in his vehicle several times. He refused. I told him he was going to be put in handcuffs. He began reaching in his pocket, leaning his body . . . away from me,

4

reaching into his car, wouldn't comply with my verbal commands. So at that point, I was threatened. I felt threatened." (Ex. 1, 44:11-16).

Yono then reached for Brooks' arm to place him in handcuffs. (ECF No. 10-2, 01:07-10). Brooks exclaimed, "don't touch me", and Yono responded, "put your hands behind your back." (*Id*.). "Put your hands behind your back, or you're going to go to jail, man", Yono echoed.  (*Id.* at 01:10-11). "You can take me to jail, I didn't do anything wrong. I was pulling in to get gas," Brooks claimed. (*Id.* at 01:12-15). Again, Deputy Yono instructed Brooks to "put your hands behind your back." (*Id.* at 01:13-14). Yono followed, "give me your hands, dude," to which Brooks responded, "Nope. I didn't do anything wrong." (*Id*. at 01:15-18). Brooks has also testified and admitted that he understood that Yono ordered Brooks to put his hands behind his back. (Ex. 2, 69:6-9).

**D.     After Brooks resisted, Yono initiated a takedown maneuver to gain control of him.**

Deputy Yono called out over the radio and explained, "I'm fighting with the driver." (ECF No. 10-2, 01:19; **Exhibit 3**: Alex Phillips Deposition Transcript, 20:7-17). Brooks said, "You're fighting me, I didn't do anything wrong." (ECF No. 10-2, 01:19-22). After a few seconds, Yono said, "dude." (*Id*. at 01:23-29). Yono's body camera captured the sounds of a commotion, which was followed by Brooks' comment, "now you've messed up." (*Id*.).

5

Yono initiated a takedown maneuver on Brooks, who fell away from his sedan. (ECF No. 10-2, 01:28-30; ECF No. 10-3,[2] 01:35-1:37). The video footage establishes, contrary to Brooks' allegation, that he was not "shoved" into his car. (ECF No. 10-3, 01:17-1:39; Complaint at ¶ 24). Both on the ground at this point, Yono repeatedly said "put your hands behind your back," and Brooks continued his resistance by insisting that he "didn't do anything wrong" and asking, "what are you doing?"  (ECF No. 10-2, 01:33-36). Still grappling with Brooks, Yono said, "I'm gonna tase you dude." (*Id.* at 01:36-38). Brooks exclaimed, "Fucking tase me? I didn't do anything wrong." (*Id.* at 01:37-39).

A few moments later, Brooks managed to turn over onto his back. (*Id.* at 01:40-42).  He repeated, "What are you doing?" (*Id.* at 01:43-44). Yono responded, "give me your hands, man." (*Id.*, 01:44-45). "What are you doing, Yono," Brooks asked. (*Id.*, 01:45-47). While he was still on his back and continued to grapple with Yono, Brooks claimed, "I didn't do anything . . . now you're assaulting me." (*Id.*, 01:48-51). "Turn over now," Yono commands. (*Id.*, 01:51-52). Brooks asked, "For what?" (*Id.*, 01:53-55).  Yono repeated, "Turn over and give me your hands."  (*Id.*, 01:53-55).  Brooks continued to insist he "didn't do anything wrong," and Yono

---

[2] Deputy Yono's Dashcam does not provide audio of the verbal interaction between Plaintiff and Deputy Yono, but it provides a better visual angle of the takedown maneuver and provides another angle that demonstrates Plaintiff's active resistance. (*See* ECF No. 10-3, 1:17-3:04).

responded, "You're making this worse for yourself . . . Yes, you did." (*Id.*, 01:55-58).  Brooks responded, "No, I didn't," and yelled out, followed by, "Now you've fucked up. Really? This is how you're gonna treat a fucking war hero? You're assaulting me." (*Id.*, 01:29-2:06).  Yono yelled, "Turn over!" (*Id.*).

Brooks then shouted, "Hey, somebody call 911! This guy literally assaulted me for no reason. No Miranda rights." (*Id.*, 02:08-10).  And Yono said, "give me your hands, man." (*Id.*, 02:04-15).  Brooks asked, "Is that audio recording?" (*Id.*, 02:16-19).  As Yono said, "Quit resisting and give me …," Brooks yelled, "I'm not resisting!" (*Id.*). Yono responded, "then give me your hands!" (*Id.*).

**E.     Brooks struggled with Yono for about a minute and a half before other Washtenaw County officers arrived at the scene to help detain Brooks.**

Deputy Alex Phillips arrived on scene. (*See Id.*, 02:49; ECF No. 10-4, 00:40-00:49). At that time, the officers finally gained control of Brooks.  (ECF No. 10-2, 03:05; ECF No. 10-4, 01:02).

**F.     Brooks pleaded guilty to attempted resistance and obstruction of an officer performing his duties.**

In his report, Deputy Yono requested that the prosecutor charge Brooks with Resisting and Obstructing, a felony under MCL 750.81d(1). (**Exhibit 4**: Partially Redacted Report).  The prosecutor ultimately charged Brooks with Attempted Assaulting/Resisting/Obstructing under MCL 750.81d(1) and 750.92, a misdemeanor. (**Exhibit 5**: Misdemeanor Complaint).

7

On December 22, 2022, Brooks pleaded guilty to the charge and judgment was entered. (**Exhibit 6**: Judgment of Sentence). In doing so he, conceded that he attempted "to assault, batter, wound, resist, obstruct, oppose, or endanger Deputy Yono, a sheriff or deputy sheriff of the county of Washtenaw that the defendant knew or had reason to know was performing his or her duties…" (Ex. 5).

## Standard of Review

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the non-moving party." *Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 518 (6th Cir. 2021) (internal citations and quotations omitted). However, the nonmovant "must present more than 'a scintilla of evidence in support of its position; there must be evidence on which the jury could reasonably find for the [non-moving party].'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (modification in *Thompson*). And the nonmovant "must employ proof other than his pleadings and own affidavits to establish the existence of specific triable facts." *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

<u>Argument</u>

**I.     Yono is entitled to qualified immunity because he used objectively reasonable force and no clearly established law placed his conduct out of constitutional bounds.**

Qualified immunity operates as "an *immunity from suit* rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

At the summary judgment stage, a law enforcement officer is entitled to qualified immunity unless a plaintiff can establish both of the following: "(1) there is a genuine dispute of material fact as to whether the official deprived h[im] of a constitutional right, and (2) the right was clearly established at the time of the official's actions such that a reasonable official would have known that h[is] actions were unconstitutional." *Hicks v. Scott*, 958 F.3d 421, 430 (6th Cir. 2020). A court may conduct its inquiry in any order; however, "both [questions] must be answered in the affirmative for the case to go to a factfinder[.]" *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). "If either [prong] is not satisfied, qualified immunity will shield the officer from civil damages." *Id*. Ultimately, the plaintiff, Brooks, bears the burden of showing that an officer is not entitled to the defense of qualified immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

Brooks cannot meet his burden. The undisputed evidence, which includes video footage, establishes that Deputy Yono's actions were well-within the bounds of the Fourth Amendment and did not violate a clearly established constitutional right.

**A.      Deputy Yono's takedown maneuver did not constitute excessive force under the Fourth Amendment.**

To prevail on his excessive force claim, Brooks must show that Yono's decision to initiate the takedown maneuver was objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Courts must "judge the use of force from the perspective of a reasonable officer on the scene, 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Reich v. City of Elizabethtown*, 945 F.3d 968, 978 (6th Cir. 2019) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The objective reasonableness standard requires "careful attention to the facts and the totality of the circumstances of the case, 'including [a] the severity of the crime at issue, [b] whether the suspect poses an immediate threat to the safety of the officers or others, and [c] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id*. These factors are addressed in reverse order.

**1.      Brooks actively resisted.**

Active resistance is defined "as noncompliance that is coupled with some outward manifestation—either verbal or physical—on the part of the suspect that

10

suggests volitional and conscious defiance." *Kent v. Oakland Cnty.*, 810 F.3d 384, 392 (6th Cir. 2016) (internal quotations omitted). In other words, an individual's active resistance includes circumstances where the individual is "physically struggling with, threatening, or disobeying officers." *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (citation omitted).

Here, there is no genuine dispute that Brooks actively resisted Deputy Yono. In his motion to dismiss under Fed. R. Civ. P. 12(b)(6), Deputy Yono previously argued that Brooks actively resisted. [ECF No. 10, PageID.57]. This Court agreed, holding that "the video evidence clearly shows" that Brooks resisted Deputy Yono and that "no reasonable jury could watch the video evidence and agree with Brooks that he did not resist Yono during the arrest." [ECF No. 19, PageID.156].

### 2. Before the takedown maneuver, Brooks engaged in behavior that qualified as a felony under Michigan law.

An officer's use of force is not evaluated by the suspect's original offense, but by the events that occur after the suspect's encounter with the officer begins. *Ryan v. Hazel Park*, 279 F. App'x 335, 338 (6th Cir. 2008) ("This Court has held that officials are entitled to qualified immunity in the face of excessive force allegations even when the plaintiff was suspected of relatively minor crimes if the plaintiff resisted and the officials responded with force.") (internal quotations omitted).

Deputy Yono initially pulled Brooks over for speeding. (Ex. 1, 62:15-16, 20:4-6, 19:1-3). There is no dispute that Brooks understood that Deputy Yono was an officer who Brooks "knew or had reason to know was performing his duties" when Deputy Yono asked Brooks to get back in the car after Deputy Yono announced that he had pulled Brooks over for speeding. (Ex. 5; Ex. 6; Ex. 2, 58:13-23; ECF No. 10-2, 00:45-51). By refusing to comply with those orders and actively resisting Deputy Yono, Deputy Yono reasonably believed that Brooks was committing a felony under MCL 750.81d(1). To that end, Deputy Yono's report requested that the prosecutor charge Brooks with Resisting and Obstructing. (*See* Ex. 4).

The prosecutor ultimately charged Brooks with one count of Attempted Assaulting/Resisting/Obstructing pursuant to MCL 750.81d and 750.92. (*See* Ex. 5). Brooks pleaded guilty to that charge. (*See* Ex. 6).

In sum, although the encounter began as a routine traffic stop, circumstances changed when Brooks (1) knowingly refused to comply with lawful commands, (2) became physically and verbally defiant and resistant, and (3) created uncertainty about whether he was armed by reaching into his car and putting his left hand in his pocket as he declared that he perceived Deputy Yono as "a threat." Under these circumstances, Deputy Yono was justified in using reasonable force, including a takedown maneuver, in an attempt to gain control over Brooks.

12

### 3. Brooks' conduct posed a safety risk to Yono.

Courts must consider the totality of the circumstances in determining "whether an officer reasonably believed that a person posed an imminent threat of serious bodily harm[.]" *Palma v. Johns*, 27 F.4th 419, 432 (6th Cir. 2022). Though no factor is dispositive, the following considerations are relevant:

> (1) why the officer was called to the scene; (2) whether the officer knew or reasonably believed that the person was armed; (3) whether the person verbally or physically threatened the officer or disobeyed the officer; (4) how far the officer was from the person; (5) the duration of the entire encounter; (6) whether the officer knew of any ongoing mental or physical health conditions that may have affected the person's response to the officer; and (7) whether the officer could have diffused the situation with less forceful tactics.

*Id*. (cleaned up) (temporal factor modified in *Feagin v. Mansfield Police Dep't.*, No. 24-3710, 2025 WL 2621665, at \*10 (6th Cir. Sept. 11, 2025) (recognizing that "the seconds around the time of the [use of force are] a relevant (but not the lone) consideration in assessing the permissibility of the force used").

In this case, the totality of the circumstances demonstrates that Deputy Yono reasonably believed that Brooks posed an imminent threat of serious bodily harm.

***First***, Yono reasonably believed Brooks possessed a weapon. The Sixth Circuit recognizes that an "arresting officer may use force against a noncompliant suspect to bring the situation under control[,]" especially when the officer is "unsure what a suspect possesses in his pocket." *Robinson v. City of Knoxville, Tennessee*, No.

13

24-5159, 2025 WL 621451, at \*8 (6th Cir. Feb. 26, 2025) (citations omitted); *Bolden v. City of Euclid*, 595 Fed. App'x. 464, 471 (6th Cir. 2014) (officer's use of force was reasonable where plaintiff disregarded officer commands and reached into his pockets to pull out a phone).

During his deposition, Yono explained, "I asked [Mr. Brooks] to get back in his vehicle several times. He refused. I told him he was going to be put in handcuffs. He began reaching in his pocket, leaning his body . . . away from me, reaching into his car, wouldn't comply with my verbal commands. So at that point, I was threatened. I felt threatened." (Ex. 1, 44:11-16).



(ECF No. 10-2, 00:55).

Here, the dashcam and bodycam videos show Brooks reaching back into his vehicle and re-emerging with his left hand in his pocket after being instructed to "stay in the car," causing reasonable uncertainty as to whether Brooks was armed. (ECF No. 10-2, 00:45-1:03).



(ECF No. 10-2, 01:00).

***Second***, immediately after re-emerging from his vehicle, Brooks extended his right hand toward Yono and stated: "so you're approaching me and I'm taking that as a threat." (ECF No. 10-2, 00:59-01:00). Although Brooks *eventually* explained that he did not "have any weapons," he only did so *after* Yono initiated the takedown maneuver. (*Id*. at 03:30-47).

15

***Third***, during the pre-takedown interaction, Yono was only a few feet away from Brooks, increasing the likelihood that Brooks could inflict immediate and serious bodily harm. (*Id.* at 00:59-01:00).

***Fourth***, during his initial exchange with Brooks, Yono did not have reason to believe Brooks had a mental or physical condition that interfered with his ability to comply with Yono's orders. Brooks' general claim that he was a "war hero" while they were grappling on the ground was insufficient to inform Yono of any specific, pre-existing mental or physical health conditions. (ECF No. 10-2, 01:57, 02:03, 02:26). Bodycam footage establishes that Brooks only disclosed his pre-existing injuries to the Washtenaw officers after he was placed in handcuffs, when Yono and Deputy Phillips had finally gained control over Brooks. (ECF No. 10-2, 3:34-49).

***Finally***, although the Sixth Circuit permits the use of a taser in similar circumstances, Yono opted for less forceful control tactics. *Kent*, 810 F.3d at 392; *Rudlaff,* 791 F.3d at 642. Deputy Yono first used verbal de-escalation techniques, (Ex. 1, 44:17-25, 45:1-4), and only resorted to physical force after Brooks actively resisted Deputy Yono's attempts to place him in handcuffs.

Therefore, in light of the totality of the circumstances, Yono's belief that Brooks posed a safety risk was objectively reasonable.

16

**B.    Yono's takedown maneuver did not violate clearly established law.**

"An officer enjoys qualified immunity and is not liable for excessive force unless he has violated a clearly established right such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Kingsley*, 576 U.S. at 400 (cleaned up). "To be clearly established, the law must have been sufficiently clear such that every reasonable official would understand that what he is doing is unlawful." *Reich*, 945 F.3d at 981 (internal quotations omitted). In other words, "[e]xisting case law" must place the question "'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

The constitutional right cannot be "defined at 'a high level of generality.'" *Id.* (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)). "[S]pecificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Kisela*, 584 U.S. at 104-05 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)). To that end, qualified immunity gives police officers "ample room for mistaken judgments, by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotations omitted).

17

In its September 30, 2024, opinion and order, this Court concluded that the "video evidence here clearly shows Brooks verbally and physically resisting Yono's arrest" and "doubts that there is a clearly established Fourth Amendment right to be free from a takedown in response to such behavior." [ECF No.19, PageID.159 (footnote 1)]. To that end, although Brooks bears the burden of establishing that Deputy Yono violated a clearly established right, *Johnson*, 790 F.3d at 653 (6th Cir. 2015), Deputy Yono has not found an on-point case that clearly establishes a constitutional right against being taken down to the ground when an individual is actively resisting an officer's attempt to handcuff the individual under similar circumstances.

In contrast, the Sixth Circuit has routinely upheld the use of *more significant physical* force—such as using a taser—when an individual actively resists an arrest. *See Kent*, 810 F.3d at 392 ("We have often found that the reasonableness of an officer's use of a taser turns on active resistance[.]"); *Rudlaff,* 791 F.3d at 642 ("When a suspect actively resists arrest, the police can use a taser [ ] to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot.").

Instead of employing his taser, Yono used less force. Even then, he did not initiate the takedown maneuver until after Brooks (1) reached back into his vehicle after being told to "stay in the car", (2) threatened Yono by placing his left hand in his pocket and extending the right hand toward Yono while stating, "So you're

18

approaching me. I'm taking that as a threat", and (3) refused to heed Yono's commands to put his hands behind his back.

No clearly established Sixth Circuit precedent has established beyond debate that using a takedown maneuver under these circumstances would violate Brooks' Fourth Amendment rights. To the contrary, well-established Sixth Circuit precedent demonstrates that Yono could have used greater force than he chose to employ against Brooks on April 27, 2022. Deputy Yono is entitled to qualified immunity.

## Conclusion

For these reasons, Deputy Yono requests that the Court grant summary judgment in his favor and dismiss all claims against him with prejudice.

> MILLER JOHNSON
> *Attorneys for Defendant*

Dated:  October 10, 2025

By: /s/*James A. Buster*
Keith Eastland (P66392)
James A. Buster (P81186)
Amanda Rauh-Bieri (P83615)
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, Michigan 49503
(616) 831-1700
eastlandk@millerjohnson.com
busterj@millerjohnson.com
rauhbieria@millerjohnson.com

## <u>CERTIFICATE OF SERVICE</u>

James A. Buster certifies that, on October 10, 2025, the foregoing was served upon the attorney(s) of record pursuant to this Court's electronic filing system.

MILLER JOHNSON
*Attorneys for Defendant*

Dated:  October 10, 2025

By: /s/*James A. Buster*
Keith Eastland (P66392)
James A. Buster (P81186)
Amanda Rauh-Bieri (P83615)
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, Michigan 49503
(616) 831-1700
eastlandk@millerjohnson.com
busterj@millerjohnson.com
rauhbieria@millerjohnson.com